THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Thomas Wade Long and Clyde Kiser, individually and on behalf of TnW and More, | ) ) ) | C.A.: 4:23-cv-05742-JD |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| David Jordan, Thomas Keller, and Arrigo Carotti, | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs Thomas Wade Long ("Long") and Clyde Kiser ("Kiser"), individually and on behalf of TnW and More (collectively "Plaintiffs"), originally filed this action in the Horry County Court of Common Pleas alleging causes of action under 42 U.S.C. § 1983 and the South Carolina Constitution against Defendants David Jordan ("Jordan"), Thomas Keller ("Keller"), and Arrigo Carotti ("Carotti") (collectively "Defendants").[1] (DE 1-1). Defendants subsequently removed this action to this Court (DE 1), and the matter is presently before the Court on Defendants' Motion to Dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. (DE 4). Plaintiffs filed a Response in Opposition (DE 6) to Defendants' motion, and the motion is ripe for review and decision. After reviewing the motion and memoranda submitted, the Court grants in part and denies in part Defendants' Motion to Dismiss (DE 4) for the reasons stated herein.

## BACKGROUND

Plaintiffs allege they own and operate a marina in Little River, South Carolina. (DE 1-1, ¶ 8.) Plaintiffs contend that beginning in 2021, Defendants "began a campaign of harassment that

---

[1]     Plaintiffs allege that for all times relevant to their Complaint Jordan was a supervisor for the Horry County Planning Department, Keller was an inspector for the Horry County Zoning and Planning Department, and Carotti was the county attorney for Horry County. (DE 1-1, ¶¶ 3–5.)

1

targeted Plaintiffs and their business . . . [and] [d]espite following all instructions and requirements for the issuance of permits, Defendants worked to deny said permits without any legal justification or rational basis." (*Id*. at ¶ 9.) For example, Plaintiffs allege Defendants required Plaintiffs to remove a sunshade sail while allowing a neighboring business to keep sunshade sails; required Plaintiffs to obtain permits for every repair or construction, no matter how small, while other businesses were allowed to perform construction and repairs without the necessary permits or permission; allowed another business to park their floating alcoholic beverage stations on Plaintiffs' dock without a permit or justification; cited Plaintiffs for an oil spill they were not responsible for; and made false allegations in inspection reports to assist another business in litigation against Plaintiffs. (*Id*. at ¶¶ 11, 18–21; 24.)

As it relates to Little River Campground, Inc. ("Little River Campground"), a "new marina business," Plaintiffs allege Defendants refused to issue a permit to Plaintiffs' marina operation, forced Plaintiffs to remove a temporary hut, and required Plaintiffs to provide restrooms while allowing Little River Campground to operate with a temporary structure and without restrooms. (*Id*. at ¶¶ 11–13, 24.)

Plaintiffs also contend that even though Plaintiffs had a proper permit, Defendants issued a stop work order against them in December 2022, and Defendants would not lift the stop work order until Plaintiffs attended a required meeting and produced their permit. (*Id*. at ¶¶ 14–16, 24.)

## LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v.*

2

*Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.* To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal,* 556 U.S. at 678 (internal quotation marks omitted). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiffs bring this action pursuant to 42 U.S.C. S. 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994)(quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)). A legal action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 707 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the

3

United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

Initially, Defendants contend Plaintiffs' claims should be dismissed because Plaintiffs have only alleged claims against Defendants in their official capacities. However, in their response in opposition to Defendants' motion to dismiss, Plaintiffs conceded, "Plaintiffs did not sue any defendants in [their] official capacity." (DE 6 at 2.) As such, any claims are against Defendants in their individual capacities.

### A. "Class of One"

Plaintiffs raise a "class of one" claim, arguing Defendants subjected Plaintiffs "to heightened scrutiny without any legal justification and allow[ed] other business to engage in the exact behavior they prohibited Plaintiff[s] from engaging [in]." (DE 1-1, ¶ 24.) Plaintiffs contend "[t]he intentional harassment and misrepresentations by Defendants were of a significant nature and were done with an intent to injure the business of Plaintiffs . . . [and] [t]here was no rational basis for the disparate treatment to Plaintiffs." *Id*. at ¶ 25. Defendants argue Plaintiffs have failed to establish an Equal Protection claim[2] brought by a "class of one" because Plaintiffs have not alleged that other businesses are "similar enough such that disparate treatment is not justified, or, in fact necessary[,]" and Plaintiffs have not alleged "an animus with a factual basis for the alleged actions that form the basis of their class of one claim." (DE 4-1, p. 8.)

---

[2]    Although Plaintiffs do not specifically refer to their cause of action as being under the Equal Protection clause, "The Supreme Court has explained that '[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine' and 'do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.'" *Quinones v. City of Binghamton*, 997 F.3d 461, 468 (2d Cir. 2021) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11–12, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014)). ‼

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005)(quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  "Thus, the Supreme Court has recognized the validity of 'class of one' Equal Protection claims, 'where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. (quoting *Village of Willowbrook*, 528 U.S. at 564).

Here, Defendants concede, "Plaintiffs' Complaint seems to allege disparate treatment—a fairly low bar." (DE 4-1, p. 7).  However, Defendants contend Plaintiffs have failed to meet their burden of proving the existence of purposeful discrimination, and Plaintiffs have not alleged facts which "indicate the businesses are similar enough such that disparate treatment is not justified, or, in fact, necessary." *Id*. at p. 8.  The Court disagrees.

As to the "similarly situated" prong, although it is unclear if Plaintiffs are similarly situated to some of the businesses that Plaintiffs allege were treated differently, Plaintiffs allege Little River Campground, another marina business in the same area, was treated differently.  (*See* DE 1-1, ¶¶ 12–13, 24.)  Plaintiffs allege that Little River Campground was allowed to operate with a temporary structure while Plaintiffs were not, and that Little River Campground was not required to provide restrooms while Plaintiffs were.  *Id*.  At this stage in the litigation, before the benefit of discovery and viewing the Complaint in the light most favorable to Plaintiffs, the Court finds Plaintiffs have alleged Little River Campground was similarly situated for purposes of a "class of one" claim.

The Court also disagrees with Defendants' argument that Plaintiffs have not met their burden of proving the existence of purposeful discrimination. Plaintiffs' Complaint can fairly be construed as alleging Defendants purposefully required Plaintiffs to provide restrooms and purposefully forbade Plaintiffs from using temporary structures without a rational basis and without requiring or forbidding the same of Little River Campground. *Id*., *see Village of Willowbrook*, 528 U.S. at 565 (finding a complaint could fairly be construed as alleging intentional discrimination without rational basis). Plaintiffs allege "the intentional harassment and misrepresentations by Defendants were of a significant nature and were done with an intent to injure the business of Plaintiffs[,] and . . . [t]here was no rational basis for the disparate treatment of Plaintiffs." (DE 1-1, ¶ 25.) Plaintiffs allege they were subjected to "heightened scrutiny without any legal justification" and other businesses were allowed to "engage in the exact behavior [Defendants] prohibited Plaintiff from engaging[.]" *Id*. at ¶ 24.

Based on the foregoing, the Court denies Defendants' motion to dismiss Plaintiffs' class of one claim.

### B. Takings Claims

Plaintiffs allege Defendants engaged in an unconstitutional taking under the South Carolina Constitution and the Fifth Amendment of the United States Constitution. Defendants argue Plaintiffs "seem to allege a regulatory taking[,]" but Defendants contend Plaintiffs "have failed to properly plead a takings claim . . . due to failing to meet the requirements of the *Penn Central*[3] factors." (DE 4-1, p. 9.)

The Takings Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amd. V; *see* S.C. CONST. Art. I §

---

[3]    *Penn Central Transp. Co., v. City of New York*, 438 U.S. 104 (1978).

13.[4] "A 'taking' can be of personal or real property, and it can be effected through either a physical appropriation of the property by the Government or through a regulation that goes 'too far' in depriving the owner of her property rights." *Md. Shall Issue v. Hogan*, 963 F.3d 356, 364 (4th Cir. 2020). "If a use restriction denies the owner all economically beneficial use of the land, then the restriction has gone too far and—under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)—the government has made a per se taking[,]" "[b]ut such restrictions are rare." *Blackburn v. Dare Cnty.*, 58 F.4th 807 (4th Cir. 2023). "Instead, most use restrictions are evaluated under a 'flexible balancing test to determine whether compensation is required." *Id*. Courts consider the factors set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), and examine (1) the "economic impact" of the use restriction, (2) how much the restriction interferes with "investment-backed expectations," and (3) "the character of the governmental action." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, (2021). In this analysis, "[t]he first two factors—economic effects and investment-backed expectations—are '[p]rimary among those factors.'" *Id.*

Defendants argue that Plaintiffs are not alleging any physical invasion or complete deprivation of all economic use through government regulation. (*See* DE 4-1, p. 10.) The Court agrees. Thus, the Court proceeds with an analysis based on the *Penn Central* factors.

The threshold question is the nature of the property interest with which Plaintiffs contend that Defendants have interfered. *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1152 (Fed. Cir. 2014); *Hardin v. S.C. Dep't of Transp.*, 371 S.C. 598, 605, 641 S.E.2d 437, 441 (2007) (noting that in considering a taking under the South Carolina Constitution, the court "analyze[s]

---

[4]    *Braden's Folly v. City of Folly Beach*, 439 S.C. 171, 190 n. 17, 886 S.E.2d 674, 683 n. 17 (2023) ("The takings analysis under the South Carolina Constitution is identical to the analysis under federal law.")

what property interests exist" in context of the claimed taking); *cf. Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984).

In their Motion to Dismiss, Defendants note a court will "grant a motion to dismiss when a plaintiff's Fifth Amendment Takings claim fails to assert the kind of property right that could be the subject of a taking claim[.]" (DE 4-1, p. 14 (quoting *Mod. Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 581 (2019) *aff'd*, No. 2020-1107, 2021 WL 4486419 (Fed. Cir. Oct. 1, 2021)(internal quotations omitted)). In their response to Defendants' motion, Plaintiffs noted, "the taking was the business income during the stop work order issued under false pretenses." (DE 6, p. 4.); *see also* (DE 1-1, ¶ 38 alleging "Defendant affirmatively took and destroyed Plaintiffs' vested rights to conduct business according to their lawfully issued business licenses.") However, "business in the sense of the *activity of doing business*, or the *activity of making a profit* is not property in the ordinary sense." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)(emphasis in original).[5] As such, Plaintiffs have not alleged a property interest.

Furthermore, the Court agrees with Defendants' contention that Plaintiffs have failed to sufficiently allege facts to satisfy the *Penn Central* factors. Although Plaintiffs contend the stop work order resulted in their business being shut down completely, Plaintiffs' allegations are conclusory. Plaintiffs have not pled any facts establishing a diminution in value, let alone a substantial one. Plaintiffs are "required to allege facts that allow [the Court] to infer what diminution they suffered." *Blackburn*, 48 F.4th at 812. The Complaint is wholly lacking in this regard. The sole statement in the Complaint about the economic impact of the alleged taking reads:

---

[5]    The Complaint alleges Plaintiffs were deprived "of the ability to freely contract with *potential* patrons." (emphasis added) (DE 1-1, ¶ 25.); *see U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 19 n.16 (1977 )(indicating contracts are property and may be protected by the Takings Clause). However, the Complaint does not allege any contracts had already been entered into at the time of the stop work order.

"Defendant did take Plaintiffs' property rendering it worthless for the purposes for which it was obtained and eliminating its market value." (DE 1-1, ¶¶ 30, 39.) However, "this is a legal conclusion, because it simply alleges that there was a taking and then recites the standard for compensation." *Blackburn*, 48 F.4th 812; *see also First Eng. Evangelical Lutheran Church v. Los Angeles Cnty.*, 482 U.S. 304, 319, 322 (1987) (holding that the remedy for temporary takings is payment of fair market value of the property for the time the regulation was in effect). Therefore, the allegations are insufficient to survive a Rule 12(b)(6) motion to dismiss. *See ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019) ("[S]imply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard."); *Iqbal*, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.")

As to investment-backed expectations and "the character" of the use restriction, the Court acknowledges Plaintiffs contend they had a proper permit and a stop work order was issued. (DE 1-1, ¶ 14.) However, Plaintiffs do not allege what their permit was for or what the stop work order stopped. When coupled with the uncertainty of what property right is at issue, based on the Complaint, the Court cannot identify from the facts investment-backed expectations or "the character" of the use restriction. As such, Plaintiffs have failed to meet the pleading standard. *See Iqbal*, 556 U.S. at 678.

Although granting Defendants' Motion to Dismiss as to Plaintiffs' Takings claims is appropriate, the Court notes that Plaintiffs' Response in Opposition (DE 6) seeks permission to amend their pleadings. To the extent that Plaintiffs desire to amend their Complaint to provide further allegations to support their claims, the Court grants Plaintiffs leave to do so by September 23, 2024. *See* Fed R. Civ. P. 15(a)(2).

9

## CONCLUSION

For the foregoing reasons, it is Ordered that Defendants' Motion to Dismiss (DE 4) is granted in part and denied in part. Should Plaintiffs wish to amend their Complaint, they may do so by September 23, 2024.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

September 9, 2024
Florence, South Carolina

10